IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:16-CV-293-FL

| | | |
|---|---|---|
| GWENDA G. MOORE, and R. WILTON MOORE, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | ORDER |
| SETERUS, INC.; FEDERAL NATIONAL MORTGAGE ASSOCIATION; THE BANK OF NEW YORK MELLON f/k/a THE BANK OF NEW YORK, and TRUSTEE SERVICES OF CAROLINA, LLC, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

This matter is before the court on motion to dismiss pursuant to Federal Rule 12(b)(6) for failure to state a claim and pursuant to Rule 8(a) for failure to provide a short, plain statement of the claim. (DE 7). The motion has been fully briefed, and the issues presented are ripe for ruling. For the reasons that follow, the motion is granted.

**STATEMENT OF THE CASE**

Plaintiffs commenced this action November 18, 2016, in the General Court of Justice, Superior Court Division for Beaufort County, North Carolina, asserting breach of contract and various torts against defendants Seterus, Inc. ("Seterus"), Federal National Mortgage Association ("Fannie Mae"), and The Bank of New York Mellon ("Bank of New York") (collectively, "the lender defendants"). Plaintiffs' claims arise from an offer of modification to a promissory note secured by property located at 129 Goose Creek Drive, Washington, North Carolina ("Goose Creek

Drive Property") and defendant Seterus's procurement of allegedly excessive insurance policies and inspection services pertaining to the Goose Creek Drive Property. Defendants removed the action to this court December 19, 2016. Plaintiffs seek compensatory and punitive damages from the lender defendants. Plaintiffs also seek declaratory judgment that documents attached to the complaint create a binding contract requiring the lender defendants to modify the note to require payments not in excess of $1529.55 per month and permitting plaintiffs to retain the Goose Creek Drive Property.[1] The lender defendants filed the instant motion December 20, 2016, asserting that all claims fail as a matter of law and should be dismissed pursuant to Federal Rules of Civil Procedure 8(a) and 12(b)(6).

## STATEMENT OF THE FACTS

The facts alleged in the verified complaint may be summarized as follows. On or about May 10, 2002, plaintiff Gwenda Moore ("Gwenda") executed a promissory note ("the note") payable to the order of non-party RBC Centura Bank. Gwenda borrowed $220,000 at an interest rate of 6.875 percent per annum. (DE1-1 at 28). To secure payment of the note, plaintiffs concurrently signed a deed of trust conveying the Goose Creek Drive Property to non-party CB Services Corp. as trustee under the deed of trust. (Id. at 31). The initial monthly payment under the note was $1,445.24, exclusive of escrow fees, (id. at 28), later reduced to $1,220.49 beginning June 1, 2013, pursuant to a modification allowed by then-holder of the note, JP Morgan Chase Bank, N.C. (Id. at 46). Following modification, Gwenda defaulted on her repayment obligations. (DE 1-1 at 4 ¶ 14).

---

[1] Plaintiffs assert no substantive claims against defendant Trustee Services of Carolina, LLC ("Trustee Services") and join it solely to facilitate injunctive relief where defendant Seterus hired Trustee Services to prosecute foreclosure against the Goose Creek Drive Property.

The lender defendants are engaged in the business of consumer lending. (Id. at 2–3 ¶¶ 2–4). Defendant Fannie Mae underwrites consumer loans and is current holder of the note. (Id. at 2–3 ¶ 3, 4 ¶ 17) Defendant Bank of New York is a banking institution and currently has custody of the original document evidencing the note. (Id. at 3 ¶ 4). Defendant Seterus services the note on behalf of Fannie Mae. (Id. at 1 ¶ 2, 4 ¶ 17). Seterus hired defendant Trustee Services to initiate and prosecute foreclosure against the Goose Creek Drive Property following Gwenda's default. (Id. at 9 ¶ 43).

On or about June 5, 2014, defendant Seterus sent to plaintiff Gwenda a document styled as an offer for a "Trial Period Plan" ("TPP"). (Id. at 52). The TPP consists of a three-page letter endorsed by Seterus, an accompanying three-page document titled "Fannie Mae Loan Modification – Frequently Asked Questions[,]" a one-page document titled "Fannie Mae Loan Modification – Important Program Information Additional Trial Period Plan Information and Legal Notices[,]" and two additional one-page documents including a table of miscellaneous definitions and information about avoiding credit and lending scams. (Id. at 52–60). The first page of the TPP includes the following information:

> Dear MOORE, GWENDA G:
>
> You qualify for a new loan modification program that could bring your loan current. Based on a careful review of your loan, we are offering you an opportunity to enter into a Trial Period Plan for a loan modification. All you have to do to get started is make your first trial plan payment of $1,529.55 by July 01, 2014. Then make the next two consecutive, monthly trial payments as outlined in the Trial Period Plan table below.
>
> While this modification would increase your monthly payment, your past-due amounts will be rolled into the newly modified loan – bringing the loan current. You would then pay only your new monthly payments with no further penalties, as long as you continue to meet the requirements of your loan modification agreement.
>
> If you successfully complete the Trial Period Plan, and remain eligible for the program, we will send you a permanent loan modification agreement.

(Id. at 52). The second page includes a payment schedule and section titled "modification terms[,]" as follows:

| TRIAL PERIOD PLAN | | |
| --- | --- | --- |
| Payment Number | Payment Amount | Due Date |
| 1st payment | $1,529.55 | 7/1/2014 |
| 2nd payment | $1,529.55 | 8/1/2014 |
| 3rd payment | $1,529.55 | 9/1/2014 |

> Modification terms:
> If you successfully complete the Trial Period Plan by making the required payments, you will receive a loan modification with an interest rate of 6.875%, which will be fixed for 40 years from the date the modification is effective. If we determine that the unpaid balance of your mortgage is more than 115% of the value of your home, you will be eligible to have up to 30% of your principal balance deferred; and the deferred amount will not be subject to any interest charges. The deferred principal will not be due and payable until the earliest of:
> - the end of the 40-year term of the modified mortgage, or
> - the date the interest-bearing balance of your loan has been paid off, or
> - the sale or transfer of your interest in the property, or
> - a refinance of your mortgage loan.
>
> Your existing loan and loan requirements remain in effect and unchanged during the trial period. If your last trial period payment is made in the last half of the month it is due, we may elect to extend your Trial Period Plan by an extra month. If you do not successfully complete the Trial Period Plan, this offer will be revoked, and we are not obligated to renew it.

(Id. at 53).

The third page includes defendant Seterus's endorsement appearing on the signature line. (Id. at 54). The "frequently asked questions" enclosure includes information about the nature of the trial period plan and contemplated permanent modification:

> **Q. What is a Fannie Mae Loan Modification?**
> If you successfully complete the trial period, a Fannie Mae Loan Modification offers you the ability to *permanently* modify your loan – helping to make your mortgage more affordable for the life of the loan. If you have not been evaluated for a modification under the federal Home Affordable Modification Program (HAMP) and you return a complete Borrower Response Package no later than August 02, 2014, we may be able to offer you a HAMP modification with a lower monthly principal and interest payment than we estimate you would receive for the proposed modification described above.

(id at 55), the purpose of the trial period:

> **Q. Why is there a trial period?**
> The trial period gives you time to make sure you can manage the regularly scheduled mortgage payments and could prevent a foreclosure sale. Note: This is only a temporary Trial Period Plan. Your existing loan and loan requirements remain in effect and unchanged during the trial period. Additionally, if you complete and return the Borrower Response Package, we can evaluate your loan during the trial period to see if you qualify for even better loan modification terms.

(id.), and other guarantees about the TPP and potential permanent modification, including

> **Q. What else should I know about this offer?**
> - If you make your new payments in a timely manner, we will not conduct a foreclosure sale.
> - You will not be charged any fees for this Trial Period Plan or final modification.
> - If your loan is permanently modified, we will waive all unpaid late charges.

(id.), and

5

> Q. When will I know if my loan can be modified permanently, and how will the modified loan balance be determined?
>
> Once you make all of your trial period payments on time, we will send you a Modification Agreement detailing the terms of the modified loan. The Modification Agreement will become effective once all borrowers and Seterus have signed it. Any difference between the amount of the trial period payments and your regular mortgage payments will be added to the balance of your loan along with any other past-due amounts, as permitted by your loan documents. While this will increase the total amount that you owe, it should not significantly change the amount of your modified mortgage payment.

(Id. at 56).

After receiving the TPP, plaintiff Gwenda began making payments pursuant to its terms. Gwenda paid the three required installments of $1,529.55 between July and September, 2014, and in addition, paid six additional installments in the same amount through March, 2015, each of which payments defendant Seterus accepted. (Id. at 5 ¶ 23).

Sometime between September and December 2014, defendant Seterus offered a permanent modification with proposed monthly payments of approximately $2,000 per month. (See id. at 5 ¶ 26, 8 ¶ 34). Plaintiffs rejected this offer while maintaining that the lender defendants were required to modify, and indeed modified, the note to include monthly payments of $1529.55 for the remainder of the note's payment term. Based on plaintiffs' rejection of the permanent modification offer, Seterus informed Gwenda by letter dated December 22, 2014, that a "Fannie Mae Modification" was denied and that the Goose Creek Drive Property remained subject to foreclosure. (Id. at 7 ¶ 34, 71). Thereafter, Seterus engaged defendant Trustee Services to foreclose on the Goose Creek Drive Property, which proceedings Trustee Services initiated on January 27, 2015. (Id. at 8 ¶ 43, 73).

As of November 3, 2016, plaintiff Gwenda's debt under the note amounted to $255,232.41. (Id. at 9 ¶ 45). Plaintiffs allege that $17,605.15 of this debt is related to a negative escrow balance resulting from defendant Seterus's purchase of hazard insurance policies in 2014, 2015, and 2016,

6

with total premiums in excess of a combined $14,200.00. (Id. at 9 ¶ 46). Seterus also paid for additional flood insurance, earthquake insurance, and multiple inspections of the Goose Creek Drive Property. (Id.).

Following unsuccessful requests that defendants honor the terms of the TPP by holding Gwenda's payments under the note current and accepting $1529.55 per month for the remaining term of the note, plaintiffs initiated this action.

## DISCUSSION

A.   Standard of Review

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of the complaint but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A complaint states a claim if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp v. Twombly, 550 U.S. 544, 570 (2007)). "Asking for plausible grounds . . . does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal [the] evidence" required to prove the claim. Twombly, 550 U.S. at 556.

In evaluating the complaint, "[the] court accepts all well-plead facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

7

B.   Analysis

1.   Breach of Contract

Plaintiffs assert that defendants breached the terms of the TPP by offering permanent modification with monthly payments greater than $1529.55.

Under North Carolina law, the "elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." Crosby v. City of Gastonia, 635 F.3d 634, 645 (4th Cir. 2011) (quotations omitted). To constitute a valid contract, "the parties must assent to the same thing in the same sense, and their minds must meet as to all the terms." Boyce v. McMahan, 285 N.C. 730, 734 (1974) (quotations omitted); see Horton v. Humble Oil & Refining Co., 255 N.C. 675, 679 (1961) ("[I]t is necessary that the minds of the parties meet upon a definite proposition. There is no contract unless the parties thereto assent, and they must assent to the same thing, in the same sense.").

"Interpreting a contract requires the court to examine the language of the contract itself for indications of the parties' intent at the moment of execution." State v. Phillip Morris USA Inc., 363 N.C. 623, 631 (2009) (internal citation and quotation omitted). "It is the general law of contracts that the purport of a written instrument is to be gathered from its four corners, and the four corners are to be ascertained from the language used in the instrument." Carolina Power & Light Co. v. Bowman, 229 N.C. 682, 693–94 (1949). "Where the terms of the contract are not ambiguous, the express language of the contract controls in determining its meaning and not what either party thought the agreement to be." Crockett v. First Fed. Sav. & Loan Ass'n, 289 N.C. 620, 631 (1976).

Here, the TPP includes multiple offers. First, defendant Seterus offered to refrain from initiating foreclosure proceedings during the three-month trial period upon receipt of timely

8

payments pursuant to the proposed schedule. (DE 1-1 at 58 ("If you accept this offer, we will not proceed to a foreclosure sale during the trial period as long as you comply with the terms of the Trial Period Plan.")). Seterus further offered, upon receipt of two additional timely payments of $1,529.55, to tender a further good-faith offer of permanent modification to the note. (Id. at 53 ("If you successfully complete the Trial Period Plan by making the required payments, you will receive a loan modification . . .")). The TPP is silent as to the size of monthly payment that would be due under permanent modification. (Id. at 56 ("Once you make all of your trial period payments on time, we will send you a Modification Agreement detailing the terms of the modified loan.")). Therefore, where a party to a contract is bound only by those terms contained in the contract, Seterus was not obligated by the TPP to modify the monthly payment term on the note to any particular amount. See Carson v. Imperial "400" National, Inc., 267 N.C. 229, 233 (1966) ("If the parties had intended to limit [a party's] right . . . it would have been easy to have used words limiting [that] right.").

Based on the foregoing, when plaintiff Gwenda submitted the first payment of $1,529.55 on September 1, 2014, defendants became obligated to refrain from initiating foreclosure during that month. When Gwenda timely submitted the following two payments, defendants' right to foreclose remained in abeyance through September 2014, pursuant to the TPP. Where defendant Trustee services initiated foreclosure no earlier than January 27, 2015, defendants performed their obligation to refrain from initiating foreclosure during pendency of the trial period plan.

Plaintiff Gwenda's submission of the third and final payment under the TPP triggered defendants' obligation to "send [plaintiff Gwenda] a [m]odification [a]greement detailing the terms of the modified loan." (DE 1-1 at 56). Where the complaint indicates that defendant Seterus indeed sent Gwenda an offer of permanent modification, (Id. at 5–6 ¶ 26, 8 ¶ 34), defendants performed this

9

obligation as well. Where the TPP requires no additional conduct on the part of defendants in issue here, plaintiffs' claims of breach of contract based upon the TPP must fail. See Crosby, 635 F.3d at 645.

Plaintiffs argue that the TPP either constitutes an offer permanent modification with $1529.55 monthly payments, or, even if it merely contemplates a subsequent permanent offer, the TPP constitutes Seterus's representation that the subsequent offer of permanent modification would include monthly payments of $1,529.55. Both arguments fail to account for the text of the TPP. First, as held above, the TPP contains no representations pertaining to the terms of any subsequent modification. Second, in numerous places, the TPP distinguishes itself from the contemplated permanent modification. (See e.g., DE 1-1 at 52 ("If you successfully complete the Trial Period Plan, and remain eligible for the program, we will send you a permanent loan modification agreement"), 53 ("If you successfully complete the Trial Period Plan by making the required payments, you will receive a loan modification. . ."), 55 ("we may be able to offer you a HAMP modification with a lower monthly principal and interest payment than we estimate you would receive for the proposed modification described above"), 56 ("Once you make all of your trial period payments on time, we will send you a Modification Agreement detailing the terms of the modified loan. The Modification Agreement will become effective once all borrowers and Seterus have signed it.")). Based on the foregoing, where the TTP neither constitutes an offer of permanent modification nor makes any representation as to the size of monthly payment under a permanent modification, plaintiffs' arguments on these grounds are unavailing.

  2. Tort Claims

Plaintiffs assert claims of negligence, fraud, negligent misrepresentation, breach of fiduciary

duty/constructive fraud, and violation of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"). The lender defendants seek dismissal of plaintiffs' tort claims on the ground that those claims are not distinct from breach of contract. Where the court agrees that plaintiffs' tort claims sound in the law of contract, the court need not reach the additional grounds for dismissal raised by the lender defendants.

Where a cause of action presumes the "existence of an agreement, the terms contained in an agreement, and the interpretation of an agreement," the issues raised must be relegated to the arena of contract law, and are not appropriate for resolution under tort principles. Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 347 (4th Cir. 1998). Under North Carolina law, the court must "limit plaintiffs' tort claims to only those claims which are 'identifiable' and distinct from the primary breach of contract claim." Id. at 346 (quoting Newton v. Standard Fire Ins. Co., 291 N.C. 105, 111 (1976)). Furthermore, it is "unlikely that an independent tort could arise in the course of contractual performance, since those sorts of claims are most appropriately addressed by asking simply whether a party adequately fulfilled its contractual obligations." Strum v. Exxon Co., U.S.A., 15 F.3d 327, 333 (4th Cir. 1994); see N. Carolina State Ports Auth. v. Lloyd A. Fry Roofing Co., 294 N.C. 73, 83 (1978) ("[O]ur research has brought to our attention no case in which this Court has held a tort action lies against a promisor for his simple failure to perform his contract, even though such failure was due to negligence or lack of skill."); Taylor v. United States, 89 F. Supp. 3d 766, 773 (E.D.N.C. 2014) ("[A] defendant's conduct in exercising perceived rights and remedies under a contractual agreement with another party, even if allegedly contrary to the . . . terms of the agreement, does not form the basis for a UDTPA claim.").

Here, plaintiffs' claims of negligence, fraud, negligent representation, and UDTPA violations

11

are based upon defendants' alleged refusal to offer permanent modification on the terms plaintiffs understand to be required by the TPP. Each of the foregoing claims is premised upon the terms of the TPP and interpretation of those terms. Therefore, whether or not the TPP permitted defendants to propose permanent modification on the terms actually provided to plaintiffs is a matter of interpretation of the terms of the TPP, which must be "relegat[ed] . . . to the arena of contract law." Broussard, 155 F.3d at 347. Accordingly, these tort claims are dismissed. Where plaintiffs plead the foregoing tort claims, in the alternative, as breach of the TPP, the claims may be dismissed in their entirety where, as held in the preceding section, defendants did not breach the terms of the TPP.

Plaintiffs' claim of breach of fiduciary duty is grounded in defendant Seterus's purchase of allegedly unreasonably expensive insurance and inspection services pertaining to the Goose Creek Drive Property. Seterus's right to purchase insurance and inspection services is governed by the deed of trust. (See DE 1-1 at 36 (permitting lender to purchase earthquake and flood insurance if borrower fails to do so and setting forth borrower's acknowledgment that insurance procured by lender may be significantly more expensive than insurance borrower might obtain), 37 ("Lender may charge Borrower fees for services performed in connection with Borrower's default . . . including . . . property inspection and valuation fees. . .")). Therefore, determining whether fees for insurance and inspection are reasonable turns on interpretation of the deed of trust; thus, this issue too must be "relegat[ed] to the arena of contract law." Broussard, 155 F.3d at 347. Where plaintiffs do not plead their claim based upon Seterus's purchases of insurance and inspection services in the alternative as breach of contract, this claim must dismissed.

In sum, each of plaintiffs' tort claims constitutes an attempt to cast as torts alleged breaches of the TPP. Where North Carolina law does not permits plaintiffs to recharacterize claims in this

manner, plaintiffs' tort claims must be dismissed as a matter of law. See id.

**CONCLUSION**

For the foregoing reasons, the motion to dismiss filed by defendants Seterus, Fannie Mae, and Bank of New York is GRANTED, and plaintiffs claims against these defendants are DISMISSED. Because plaintiffs' claims against defendant Trustee Services are derivative of plaintiffs' claims against the other defendants, plaintiffs' claims against defendant Trustee Services also are DISMISSED. The clerk is DIRECTED to close this case.

SO ORDERED, this the 15th day of August, 2017.

_____
LOUISE W. FLANAGAN
United States District Judge